IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BUCK'S, INC., A NEBRASKA CORPORATION,<br><br>        Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>QUIKTRIP CORPORATION, AN OKLAHOMA CORPORATION,<br><br>        Defendant and Counterclaimant. | 8:15-CV-340<br><br>ORDER |

   This matter is before the Court on QuikTrip's Motion in Limine (filing 38), QuikTrip's Second Motion in Limine (filing 57), and Buck's Motion in Limine (filing 60). QuikTrip's first motion and Buck's motion will be granted in part and denied in part, and QuikTrip's second motion will be denied.

### QUIKTRIP'S MOTION IN LIMINE

   QuikTrip's first motion in limine (filing 38) raises several issues. The Court will address them separately.

   1. COMMUNICATIONS BETWEEN TRIAL COUNSEL AND QUIKTRIP

   QuikTrip's first argument is that communications between itself and its trial counsel should be excluded. Filing 39 at 2. QuikTrip concedes that in proffering an advice of counsel defense, it has waived attorney-client privilege with respect to communications between itself and the outside counsel from whom it sought an opinion regarding sale of the property and the filing of its notice of equitable interest. *See* filing 38 at 2. The Court understands Buck's to agree that communications with respect to this lawsuit between QuikTrip and its trial counsel, Kutak Rock, are privileged. Filing 50 at 1. Accordingly, the Court will sustain QuikTrip's motion in limine with respect to communication between QuikTrip and Kutak Rock.[1]

---

[1] The Court notes that Buck's response brief does conclude that "to the extent the instant motion seeks to prevent inquiry into discussions between Kutak Rock and QuikTrip prior to

2. COMMUNICATIONS BETWEEN COUNSEL FOR QUIKTRIP AND FOR SELLER

Next, QuikTrip asserts that any communications between Kutak Rock and counsel for the seller sent after the filing of QuikTrip's notice of equitable interest should be excluded. Filing 39 at 4-6. QuikTrip argues that the evidence is irrelevant, unduly prejudicial, and an offer of compromise that should be excluded under Fed. R. Evid. 408.

The evidence at issue is a sequence of emails between QuikTrip's counsel at Kutak Rock and counsel representing the seller. Filing 40-5; filing 40-6. Counsel for the seller represented the seller's position that the parties did not, at that time, have a contract for sale of the property, and that the seller would file suit based on slander of title if QuikTrip did not withdraw its notice of equitable interest. Filing 40-5 at 1. The next day, counsel for QuikTrip emailed counsel for the seller providing counsel for the seller with contact information if counsel for the seller was "able to give [counsel for QuikTrip] the number today[.]" Filing 40-6 at 2. The Court infers that this email was a follow-up to some other communication, and that "the number" would be the price at which the seller was willing to sell the property to QuikTrip. Counsel for the seller replied with a price of $2.6 million for the entire 4-acre property. Filing 40-6 at 1-2. Counsel for QuikTrip replied back with QuikTrip's acceptance, adding, "[o]f course this makes the suit for slander of title moot, but we will need to formalize the release of that claim and dismissal if suit was indeed filed." Filing 40-6 at 1. Counsel for the seller replied and, in part, agreed that the slander of title suit was moot and that its "release/dismissal" could be handled as part of the deal. Filing 40-6 at 1.

QuikTrip's first argument is that the communications are irrelevant, because they took place well after QuikTrip filed its notice of equitable interest. "Buck's has based its entire claim around QuikTrip filing a Notice of Equitable Interest on December 30, 2014[,]" QuikTrip contends, "and this date should accordingly serve as a clear line for excluding irrelevant evidence." Filing 39 at 4. The Court disagrees. While the notice of equitable interest is certainly a linchpin of Buck's theory of the case, it was QuikTrip's eventual purchase of the property that served to finally frustrate Buck's ambition to acquire the property for itself. The negotiations leading to that purchase are clearly relevant to Buck's case.

---

the filing of the lawsuit it should be denied." Filing 50 at 2. Based on the context of that statement, the Court suspects it may have been a scrivener's error. But regardless, based on the arguments presented at the hearing on the parties' motions in limine, the Court does not understand Buck's to be pressing that position. Nor is the Court aware of any authority for the proposition that attorney-client communications are unprivileged because they occurred before litigation had commenced.

Next, QuikTrip argues that even if relevant, the evidence should be excluded pursuant to Fed. R. Evid. 403. But before discussing Rule 403, the Court will turn to Rule 408, because the arguments are related. Rule 408 provides that

> Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Rule 408(a). But, such evidence may be admitted "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Rule 408(b). QuikTrip contends that the communications at issue were aimed at settling litigation over the contested property, and would be offered to show QuikTrip's liability. Filing 39 at 6.

But the Eighth Circuit has taken a narrow view of Rule 408, finding it inapplicable to evidence of compromises or offers to compromise claims by third parties. *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 699-700 (8th Cir. 2008) (citing *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 276-77 (8th Cir. 1983)). In other words, "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated[.]" *Id.* (quoting *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997)). And here, the "claim" that QuikTrip says was being compromised was the seller's claim, not Buck's.[2]

---

[2] For that matter, it is not at all clear to the Court that the statements at issue were offers to compromise even the underlying notice of equitable interest/slander of title dispute. QuikTrip and the seller were negotiating before the notice of equitable interest was filed. The filing of the notice of equitable interest, and the slander of title suit, are really subordinate to the preexisting negotiation for sale of the property, not the other way

The Eighth Circuit also said, however, that "[a]s Judge Learned Hand explained years ago, the admission of evidence that a defendant settled a claim with a third party arising out of the same set of operative facts carries the inherent risk that 'such a concession of liability is almost sure to be taken as an admission of fault.'" *Id.* at 699 (quoting *Paster v. Pennsylvania R.R.*, 43 F.2d 908, 911 (2d Cir. 1930)). "For that reason," the Court of Appeals explained, "even the circuits that construe Rule 408 narrowly view evidence of third party settlements skeptically." *Id.* Accordingly, even if evidence of a third-party settlement is not barred by Rule 408, "admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408." *Id.* at 700 (quotation omitted).

It is with those concerns in mind that the Court turns to Rule 403, under which the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. QuikTrip argues that

> The emails reference a lawsuit filed by the [seller] which has no bearing on the ultimate issues in this case. This creates a substantial likelihood that the jury will confuse the pending action with the lawsuit referenced in the emails or assign some unfair prejudice to QuikTrip. Moreover, the content of the emails themselves are needlessly cumulative as they repeat positions of QuikTrip's opinion counsel, Michael White, embodied in other documents.

Filing 39 at 5. The Court disagrees. While the Court recognizes some possibility of confusion, the Court finds it to be remote and, for that matter, unavoidable: the legal wrangling between QuikTrip and the seller is integral to Buck's case, and Buck's has a right to present that case. Because the communications took place during QuikTrip's allegedly tortious course of conduct, they are not cumulative. And the seller's lawsuit, in fact, has substantial bearing on the ultimate issues in this case, because it cuts against QuikTrip's contention that both QuikTrip and the seller believed the November 26, 2014, contract was enforceable.

QuikTrip argues strenuously that the November 26, 2014 contract was enforceable because the parties to that contract—that is, QuikTrip and the seller—now apparently agree (and will testify) that they believed it was. But the jury is free to accept or reject that testimony. There is also evidence that

---

around. In other words, the primary objective of the negotiations was always sale of the property, not settlement of any other legal claims.

at the time—as reflected in the disputed evidence—both QuikTrip and the seller were acting in a way that was inconsistent with belief in an already-binding agreement. Perhaps the jury will believe QuikTrip's argument that QuikTrip and the seller were simply engaged in hard bargaining. But that is a credibility determination for the jury to make. And they will make it with the benefit of Buck's evidence of their negotiations. QuikTrip's motion in limine will be denied on this point.

### 3. COMMUNICATIONS BETWEEN STEVE BUCHANAN AND ROBERT MURRAY

QuikTrip seeks to exclude evidence of a conversation involving Buchanan, James Murphy, and Robert Murphy "wherein Robert Murray is alleged to have told Steve Buchanan that Murray Fields Sapp would have sold the property in question to Buck's but for QuikTrip's equitable interest in the property." Filing 39 at 6. QuikTrip argues that Robert Murray's out-of-court statement is excluded by the rule against hearsay. The Court agrees.

Buck's offers several arguments in response. First, Buck's contends, "[t]he underlying truth of the matter asserted—that the Seller would have sold the Property to Buck's but for the Lien—is a fact proven by Jim Murray." Filing 50 at 6. Perhaps so, but the way to prove it is for Jim Murray—or Robert Murray, for that matter—to testify to that fact at trial. Nothing precludes Buck's from calling them as witnesses and asking whether the property would have been sold to Buck's absent QuikTrip's notice of equitable interest. But those would be in-court statements, not out-of-court hearsay.

Buck's also contends that the statements "are not hearsay because they are not being offered to prove the truth of the matter asserted . . . but to show the impact of such statements on both Jim Murray and Steve Buchanan." Filing 50 at 6. But it is not at all clear how the effect of the statements on Jim Murray and Steve Buchanan is relevant. *Why* Jim Murray and Steve Buchanan continued to negotiate for sale of the property is not at issue. Simply put, the only relevant purpose for introducing evidence of Bob Murray's alleged statement is for the truth of the matter asserted.[3] Accordingly, QuikTrip's motion in limine will be granted on this point.

### 4. EVIDENCE OF LOST PROFITS

Next, QuikTrip contends that Buck's should be precluded from presenting evidence of lost profits, for two reasons: first, Steve Buchanan

---

[3] At this point. The use of such remarks for impeachment purposes, if the testimony at trial is contrary to them, is a matter the Court cannot address at this time.

lacks foundation to testify on that issue, and second, such damages would be speculative or conjectural.[4] Filing 39 at 7-14.

But the parties have presented the Court with drastically different descriptions of what they expect Steve Buchanan to testify at trial. *Compare* filing 39 at 7-10 *with* filing 50 at 7-9. Accordingly, the Court will deny QuikTrip's motion in limine, without prejudice to an appropriate foundational objection at trial.

The Court is also well aware that under Nebraska law, a plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages: the general rule is that uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to the amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. *Pribil v. Koinzan,* 665 N.W.2d 567, 572 (Neb. 2003). The initial question of law for the Court is whether the evidence of damages provides a basis for determining damages with reasonable certainty, *i.e.*, the evidence of damages is not speculative or conjectural. *Id.* at 573. If the evidence does provide such a basis, the issue of damages can be submitted to the jury. *Id.*

The Court will determine at trial whether there is enough evidence of damages to warrant submission to the jury. How to instruct the jury on damages—specifically, what measure of damages will be warranted by the evidence presented at trial—is a matter for later determination.

### 5. TESTIMONY REGARDING QUIKTRIP'S MOTIVES

QuikTrip asks the Court to exclude "any testimony, evidence, documents, records or argument related to QuikTrip's state of mind or intent in filing a Notice of Equitable Interest which does not come from an agent or employee of QuikTrip." Filing 39 at 14. The Court will deny that request. Whether any particular witness has sufficient foundation to testify as to what QuikTrip may have intended is a separate question, which can only be answered based on the evidence at trial. The motion in limine will be denied on this matter.

### QUIKTRIP'S SECOND MOTION IN LIMINE

QuikTrip's second motion in limine (filing 57) seeks to preclude any evidence or argument from Buck's that the December 1, 2014 proposal was a "counteroffer." In a similar vein, Buck's motion in limine (filing 60) asks the

---

[4] At the hearing on its motion, QuikTrip withdrew its Rule 403 argument with respect to this evidence. *See* filing 39 at 11-12.

Court to preclude QuikTrip from referring to any document before February 17, 2015 as a "contract." Filing 61 at 1.

The Court will deny both requests, for two reasons. One is pragmatic: it is hard to imagine what words the witnesses would be expected to use to describe the documents at issue, if not words like "offer," "counteroffer," and "contract." The circumlocutions that would be required, and the witnesses' inevitable slip-ups, would cause more confusion and prejudice than simply allowing each witness to say what they mean, and letting the parties argue about what conclusions are properly drawn from the evidence. The parties' underlying disagreement about the validity of the November 26, 2014 contract is obviously a key point they are disputing, and it is better for them to dispute it clearly, in the open.

The second reason for denying both parties' requests is legal: in the Court's view, the validity or invalidity of the November 26, 2014 contract is relevant to, but not dispositive of, the plaintiff's claim. Whether QuikTrip could reasonably have believed in the enforceability of the contract—and, therefore, whether its notice of equitable interest was legitimate—is relevant to whether filing of the notice of equitable interest was justified. Whether the contract was *actually* enforceable may be relevant to that determination, but the actual, legal enforceability of the contract is not before the Court.

In other words, QuikTrip is free to argue that the contract was valid, or that its belief that the contract was valid was reasonable. Buck's can argue that it was not. And the Court will provide the jury with instructions to help it consider those issues. But no one is seeking to enforce or escape the November 26, 2014 agreement, so the Court has no reason to make a legal determination about its enforceability. The Court will not preclude either side's witnesses from testifying about their view of the legal rights and obligations of the parties during their negotiations with the seller, or from using the vocabulary they believe is appropriate to describe the source of those rights and obligations. If an appropriate limiting instruction is proposed, or requested, the Court will consider that matter at trial. QuikTrip's second motion in limine (filing 57) will be denied.

### BUCK'S MOTION IN LIMINE

Finally, Buck's motion in limine (filing 60) raises two issues. The first—use of the word "contract" and other such terms—has been addressed above, and Buck's motion in that regard will be denied. The second is that Buck's seeks to preclude evidence relating to QuikTrip's attorney fees. The Court will grant Buck's motion in that regard: there is no argument that QuikTrip's attorney fees are somehow relevant to an issue to be determined by the jury.

Any claim for attorney fees, and supporting evidence, can be presented to the Court in an appropriate post-trial motion.

    IT IS ORDERED:

1.     QuikTrip's Motion in Limine (filing 38) is granted in part and denied in part, as set forth above.

2.     QuikTrip's Second Motion in Limine (filing 57) is denied.

3.     Buck's Motion in Limine (filing 60) is granted in part and denied in part, as set forth above.

Dated this 19th day of January, 2017.

                                          BY THE COURT:

                                          John M. Gerrard
                                          United States District Judge