IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BUCK'S, INC., A NEBRASKA CORPORATION,<br><br>   Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>QUIKTRIP CORPORATION, AN OKLAHOMA CORPORATION,<br><br>   Defendant and Counterclaimant. | 8:15-CV-340<br><br>ORDER |

This matter is before the Court on plaintiff Buck's, Inc.'s motion for a new trial pursuant to Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59 (filing 110). Buck's motion will be denied.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence in this diversity case, the Court applies "the appropriate state sufficiency standard where the issue has not been raised by the parties and the state and federal standards are similar." *Michigan Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 877-78 (8th Cir. 2015). Both state and federal law demand substantial evidence to support the jury's verdict and requires the Court to view the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences to its benefit. *See, id.*; *Frank v. Lockwood*, 749 N.W.2d 443, 449 (Neb. 2008). The standard for granting a motion for new trial is higher still. *Michigan Millers*, 793 F.3d at 878. The key question is whether a new trial is

necessary to prevent a miscarriage of justice. *Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 807 (8th Cir. 2016).

## DISCUSSION

First, Buck's renews its Rule 50 motion "seeking a judgment as a matter of law against QuikTrip on QuikTrip's affirmative defense of justification." Filing 110 at 1. But that argument misconstrues both the law and the jury instructions. As the plaintiff asserting a claim of tortious interference with a business expectancy, it was Buck's burden to prove an unjustified intentional act of interference on the part of QuikTrip. *Sulu v. Magana*, 879 N.W.2d 674, 681 (Neb. 2016). And the jury was instructed to that effect. Filing 96 at 9-10.

Furthermore, the Court finds no merit to Buck's argument that it was entitled to judgment as a matter of law with respect to justification "because there was no underlying contract upon which QuikTrip could base the filing of the Lien." Filing 111 at 2. No one was suing QuikTrip for breach of contract, so the issue was not whether Jim Murray and QuikTrip had a contract: it was whether QuikTrip could reasonably have believed it had a legal right warranting its notice of equitable interest. The evidence was sufficient to submit that issue to the jury.

Finally, even if Buck's had been entitled to judgment as a matter of law on that issue, any error was harmless: the jury found that Buck's failed to meet its burden of proof on a *different* element of its *prima facie* case. Filing 101 at 2-3. Whether or not QuikTrip's actions were justified was not part of the jury's decision. *See* filing 101.

Next, Buck's argues that "[t]he jury's verdict was against the great weight of the evidence." Filing 110 at 1. Buck's contends that

there is no explanation for how the jury—who found a valid business expectancy—could find that QuikTrip did not interfere. There was no evidence or argument to support an alternate theory for why Murray did not sell the Property to Buck's. The only testimony on the topic was from Jim Murray who testified that, but for the Equitable Lien, he would have entered into the agreement [with Buck's].

Filing 111 at 4-5.[1]

But Murray also testified that he believed Exhibit 23, after being signed by QuikTrip, was an enforceable agreement. *See* filing 106 at 5-6. Murray admitted that he was trying to "play QuikTrip against Bucky's and Bucky's against QuikTrip to get more money." Filing 106 at 17. True, Murray did testify that if QuikTrip had not filed its notice of equitable interest, he "believe[d]" the property would have been sold to Buck's. Filing 114 at 68. But the jury was not required to credit that belief. And it was clear from Murray's testimony that neither the notice of equitable interest nor the existence of a signed draft that he believed to be enforceable prevented him from continuing to negotiate with both Buck's and QuikTrip. *See* filing 106. The jury could easily have found from the evidence that Murray's failure to

---

[1] QuikTrip suggests that Buck's waived this argument by failing "to properly raise its argument that the jury's verdict is inconsistent." Filing 115 at 3. It is true that a party waives any objection to an inconsistent verdict by failing to object to the inconsistency before the jury is discharged. *Williams v. KETV Television, Inc.*, 26 F.3d 1439, 1443 (8th Cir. 1994). But Buck's is not arguing that the verdict is inconsistent—that is, Buck's does not assert that the jury made different findings that are inconsistent with each other. *See SEC v. Quan*, 817 F.3d 583, 586 (8th Cir. 2016). Rather, Buck's is simply making the conventional argument that the evidence is insufficient to support the verdict.

sell the property to Buck's was the result of his negotiating tactics, not any intervening act of QuikTrip, and that the reason Murray eventually sold the property to QuikTrip instead of Buck's was simply that QuikTrip made the most attractive offer. The jury's verdict is supported by substantial evidence.

Finally, Buck's reiterates its argument that the Court should not have instructed the jury on principles of contract law, because "it was improper to allow the jury to determine the validity of the purported contract upon which QuikTrip relied when it filed the Lien." Filing 111 at 5. But, Buck's does not accurately characterize what the jury was asked to do, which was *not* to determine the validity of the contract—rather, it was to determine whether QuikTrip acted in good faith when it filed its notice of equitable interest. And that was an appropriate question for the jury, as the Court has previously explained on the record.

But beyond that, Buck's is incorrect in arguing that "the unsupported jury verdict was likely the result of an improper jury instruction." Filing 111 at 5. The jury's verdict conclusively establishes otherwise. Whether QuikTrip could have reasonably relied on the validity of Exhibit 23 was relevant only to whether its alleged act of interference—the notice of equitable interest—was "unjustified." And the jury was instructed that the principles of contract law with which it was provided were "[t]o assist [them] in determining whether any of QuikTrip's acts were 'unjustified,' and whether QuikTrip acted in good faith . . . ." Filing 96 at 12. The jury was reminded that "the issue is whether QuikTrip acted in good faith, with a reasonable belief that it had a legally protected interest." Filing 96 at 12. And the jury never decided that issue,

because it found that no interference had taken place. *See* filing 101. So, any error in instructing the jury on justification or contract law was harmless.[2]

Accordingly,

IT IS ORDERED that Buck's, Inc.'s motion for a new trial pursuant to Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59 (filing 110) is denied.

Dated this 10th day of May, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[2] Buck's also suggests that the question received from the jury (filing 98) demonstrates that the jurors discussed justification. Filing 111 at 8-9. The Court declines to speculate on what the jury might have discussed before reaching a verdict, because what matters is the conclusion the jury reached, not any detours it might have taken on the way there. But the Court notes that the jury may have discussed issues in the search for a unanimous verdict that it ultimately did not decide once a unanimous verdict was no longer necessary.